| | |
|---|---|
| **KLESTADT WINTERS JURELLER**<br>**SOUTHARD & STEVENS, LLP**<br>200 West 41st Street, 17th Floor<br>New York, New York 10036<br>Tel: (212) 972-3000<br>Fax: (212) 972-2245<br>Fred Stevens<br>Christopher J. Reilly | Hearing Date: May 13, 2021 @<br>10:00 a.m. (EST)<br>**Objection Deadline:** May 7, 2021<br>@ 5:00 p.m. (EST) |

*Special Litigation Counsel to Gregory Messer, Chapter 7 Trustee of the Estate of Fyre Festival LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                                            :
                                                                 :    Chapter 7
FYRE FESTIVAL LLC,                                               :
                                                                 :    Case No. 17-11883 (MG)
                          Debtor.                                :
-----------------------------------------------------------------x

**TRUSTEE'S MOTION PURSUANT TO FED. R. BANKR. P. 9019 FOR AN
ORDER APPROVING A STIPULATION OF SETTLEMENT BETWEEN
THE TRUSTEE AND TICKETHOLDER CLAIMANTS**

**TO THE HONORABLE MARTIN GLENN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Gregory M. Messer, the Chapter 7 Trustee (the "Trustee") for the estate of Fyre Festival LLC (the "Debtor"), by and through his counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his motion (the "Motion") for entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving a Stipulation of Settlement (the "Agreement") between himself and each of the claimant ticketholders (each a "Ticketholder Claimant," collectively, the "Ticketholder Claimants"), who filed Proofs of Claim Nos. 4 to 281 (each a "Ticketholder Claim," collectively, the "Ticketholder Claims"), a copy of which is annexed hereto as Exhibit A. In support of the Motion the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

William Z. McFarland, a/k/a Billy McFarland ("McFarland") and his business partner, hip-hop artist Jeffrey Atkins, a/k/a Ja Rule ("Ja Rule"), started Fyre Media Inc. ("Fyre Media") in early 2016 with the intention of creating and promoting a software application for booking entertainment. In or around late-summer 2016, the two conceived of the "Fyre Festival" (the "Festival"), which was to be a unique destination concert experience in the Caribbean aimed at young millennials and featuring a number of top musical acts. The Festival was scheduled over two weekends in April and May 2017 in the Exumas, Bahamas, and was intended to, among other things, promote Fyre Media's booking application. The Festival was self-described in an offering memorandum designed to solicit investments as follows:

**OVERVIEW**

Fyre Festival leverages our global access to talent and
our understanding of the millennial demographic to create

**THE CULTURAL EXPERIENCE OF THE DECADE.**

**Fyre Festival** is a rich experience that emboldens
our quest to connect to a diverse set of influencers.

For two weekends in April and May, the curious and adventurous come
together on a private **Exuma island**:

Fyre Festival will feature **music** from the greatest talents in the world,
**immersive experiences** through art, theater, and a weekend long **treasure hunt**; as well as **informative discussions** with some of the brightest minds
in the world. Fyre will be defined by its ability to connect: the ultimate in
a tasteful experience.

(emphasis in original).

The Festival was promoted on Instagram, Twitter and other social media outlets by numerous "influencers" including socialite and model Kendall Jenner, as well as a number of other famous models like Bella Hadid and Emily Ratajkowski. Ticket buyers were promised an exotic island adventure with luxury accommodations, gourmet food, the hottest musical acts and celebrity

2

attendees. The unique social media marketing method employed by Fyre Festival tapped in on the power of FOMO (short for "fear of missing out") and was extraordinarily successful amongst millennials, resulting in significant ticket sales.

When concertgoers arrived at the Festival on April 27, 2017, they "were met with total disorganization and chaos."[1] None of the promised musical acts performed. The luxury accommodations turned out to be FEMA disaster relief tents. The gourmet food consisted of the now infamous cheese sandwich served in a Styrofoam container that was even joked about by Tina Fey during her opening monologue at the 2019 Academy Awards.[2] Feral dogs roamed the site and no models or celebrities who promoted the Festival and/or told their social media followers that they would be there, were in attendance. The disaster that became of the Festival is now infamous, capturing the attention of popular culture and spawning two separate documentaries on Hulu and Netflix.

The Ticketholder Claimants represent 277 individuals who purchased tickets to the Festival. The Ticketholder Claimants are represented by the Geregos & Geragos law firm, which filed the well-publicized $100 million class action lawsuit against the Debtor and its affiliates and insiders. Pursuant to the Agreement, the Trustee and Ticketholder Claimants are agreeing to allow the Ticketholders Claims as a collective general unsecured claim in the amount of $2 million. The settlement results in allowing a claim of approximately $7,220 for each aggrieved Ticketholder Claimant. This amount covers any and all damages associated with purchasing a ticket to a Festival that never occurred, purchasing air and other travel to the Festival, plus incidental and related damages that arose as a result of the experience. The Agreement also combines the

---

[1] This description was given by the Bahamas Ministry of Tourism on April 28, 2017. The full statement is available at https://www.bahamas.com/article/bahamas-ministry-tourism-statement-fyre-festival.
[2] Ms. Fey said to the crowd, "hey everybody, look under your seats, you are all getting one of those cheese sandwiches from the Fyre Festival."

3

Ticketholder Claims into a single claim requiring only one distribution by the Trustee, which significantly streamlines administration and is of great value to the Trustee and estate.

For all the foregoing reasons as well as those set forth below, the Trustee respectfully submits that the settlement and resolution of the Ticketholder Claims as set forth in the Agreement is reasonable and in the best interests of the Debtor's estate. Accordingly, the Trustee respectfully requests that the Agreement be approved.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief requested herein is Bankruptcy Rule 9019.

## INTRODUCTION

5. On July 7, 2017 (the "Petition Date"), an involuntary chapter 7 petition (the "Involuntary Petition") was filed by certain creditors of the Debtor.

6. On August 29, 2017, the Court entered an order for relief that directed the Debtor to file all schedules, statements, lists and creditors' matrix with fourteen (14) days of its entry, or September 12, 2017.

7. On or around August 31, 2017, Gregory M. Messer was appointed interim trustee of the Debtor's estate and duly qualified and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

## BACKGROUND

8.  The Ticketholder Claimants purchased tickets to the Festival to be put on by the Debtor in the Exumas, Bahamas, over two weekends in April and May 2017. The Festival was a well-publicized disaster where no musical act ever took the stage. The Debtor cancelled the Festival on the morning it was scheduled to begin after many ticketholders had already arrived. As a result, each of the Ticketholder Claimants asserted that they suffered significant damages as a result of breach of contract, fraud, and other claims perpetrated by the Debtor, its management and others.

9.  On or around January 20, 2018, the Ticketholder Claimants filed the Ticketholder Claims against the Debtor's bankruptcy estate as unliquidated, general unsecured claims.

10. The Ticketholder Claims were filed by and through the Ticketholder Claimants' attorneys, Geragos & Geragos, APC (the "Geragos Firm").

11. Prior to and during the pendency of this bankruptcy case, the Geragos Firm made a diligent, good faith effort to find and invite any ticketholders to be part of the Ticketholder Claimant group.

12. The Geragos Firm has and is representing the Ticketholder Claimants in connection with the prosecution of claims against non-debtors including the Debtor's former management.

13. The Parties have discussed the appropriate amount of the Ticketholder Claims and entered into the Agreement to liquidate and fix the Ticketholder Claims.

## THE SETTLEMENT

14. The settlement embodied in the Agreement was negotiated in good faith and at arms' length between the parties. The Trustee submits that the Agreement is fair and equitable and is in the best interests of the Debtor, its creditors and the estate and should therefore be approved.

5

The salient terms of the Agreement are as follows: [3]

> ➢ <u>Fixing and Allowing the Ticketholder Claims</u>.  The Ticketholder Claims shall be consolidated, fixed and allowed as a single, timely-filed general unsecured claim against the Debtor's bankruptcy estate in the total amount of Two-Million Dollars ($2,000,000.00) (the "<u>Allowed Consolidated Ticketholder Claim</u>").

> ➢ <u>Method of Distribution</u>.  When and if the Trustee makes any distribution on account of the Allowed Consolidated Ticketholder Claim (a "<u>Ticketholder Distribution</u>"), it will be by single payment made to "Geragos & Geragos, APC, as attorneys."

> ➢ <u>Geragos Firm Responsibility</u>.  The Geragos Firm shall take any and all responsibility for the allocation of any Ticketholder Distribution amongst the Ticketholder Claimants and/or itself as counsel to the Ticketholder Claimants as may be permitted pursuant to any agreements between the Ticketholder Claimants and the Geragos Firm. The Trustee shall have no right or responsibility to make any distribution to individual Ticketholder Claimants, or to monitor or review what the Geragos Firm does following the Trustee's making any Ticketholder Distribution.

**RELIEF REQUESTED**

15. By this Motion, the Trustee seeks entry of an order, pursuant to Bankruptcy Rule 9019(a), approving the Agreement and the terms, conditions, and compromises contained therein are fair and reasonable under the circumstances, and that approval of the Agreement is in the best interest of the estate and its creditors.

16. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the proposed settlement is fair and equitable and is in the best interests of the estates. <u>Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968); <u>Ionosphere Clubs, Inc. v. American National Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)</u>, 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); <u>In re Schneider</u>,

---

[3] The foregoing summary is qualified by the terms of the Agreement. To the extent of any inconsistency between this summary and the Agreement, the Agreement shall control.

2015 WL 1412364, *4-5, No. 14-CV-1166 (JMA) (E.D.N.Y. Mar. 26, 2015); Fjord v. AMR Corp., et al. (In re AMR Corp.), 502 B.R. 23, 42 (Bankr. S.D.N.Y. 2013).

17. In order to reach such a decision, the Court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense, length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment, "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424.

18. To constitute a fair and equitable compromise or settlement, the Court must find that the settlement does not "fall below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F. 2d 599, 608 (2d Cir. 1983); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992); In re Int'l Distribution Centers, Inc., 103 B.R. 420, 423 (Bankr. S.D.N.Y. 1989).

19. The Court should also consider the fair and reasonable course of action for the debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In re Del Gross, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989); see also In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); In re Lawrence & Erausguin, Inc., 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); In re Bell & Beckwith, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

20. The Court is not required to determine conclusively the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable. Instead, the Court should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." In re Adelphia Communications Corp., 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2007); see also Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir.

1983); In re Schneider, 2015 WL 1412364 at *4 (E.D.N.Y. Mar. 26, 2015); In re Worldcom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992).

21. Here, the Trustee considered numerous factors in determining that entry into the Agreement was in the best interest of the estate.

22. First, the Trustee considered the manner in which the Ticketholder Claimants were damaged by the fraudulent acts of the Debtor and its management. Each purchased a ticket to a Festival that never occurred. Many of them gave up work and other opportunities to travel to Exuma for the failed Festival. Many loaded the prepaid "Fyre Bands" that were supposed to act as currency at the Festival which ultimately became worthless. They were promised luxury accommodations and were given FEMA disaster relief tents that were too small in number to accommodate the number of concertgoers that showed up. They were promised gourmet food and were fed the now infamous cheese sandwiches in Styrofoam containers. Some were locked in the airport when they were unable to return to Miami. Based upon this, the Trustee determined that permitting a claim for approximately $7,220 in damages per aggrieved Ticketholder Claimant seemed fair and appropriate.

23. Second, the Trustee considered the administrative benefits of the Agreement. The Agreement leaves all reconciliations in and amongst the Ticketholder Claimants to the Geragos Firm and its clients. The Trustee need only write a single distribution check to the Geragos Firm, as attorneys. This permits the Trustee to avoid liquidating 277 separate claims and making 277 separate distributions on account of those claims. The relief of this administrative burden alone could save the estate significant legal and other fees.

24. Third, the Trustee considered the actual value of claims against the Debtor's estate. The Trustee believes that based upon the current amount of claims that creditors will receive a maximum distribution of 4%, even with significant concessions by the Trustee's professionals. This means that the Ticketholder Claimants will only receive a maximum of $80,000 on account of the $2 million claim. Any continued litigation would significantly reduce what is available for creditors and would negatively impact not only the Ticketholder Claimants, but the Trustee's professionals who already intend to take a considerable fee cut, and the remaining general unsecured creditors.

25. Based upon the foregoing, the Trustee respectfully submits that the settlement embodied by the Agreement is fair and equitable, is in the best interests of the Debtor's estate, and is well above the lowest point in the range of reasonableness. Accordingly, the Trustee respectfully requests that the Court approve the Agreement.

## NOTICE

26. Notice of this Motion will be given in accordance with Bankruptcy Rule 2002. The Trustee submits that such notice constitutes good and sufficient notice and that no other or further notice need be given.

## NO PRIOR REQUEST

27. No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form of the proposed order annexed hereto as <u>Exhibit B</u>, and for such other and further relief as the Court determines to be just and proper.

Dated: New York, New York
April 13, 2021

                            **KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

                By:  */s/ Fred Stevens*
                      Fred Stevens
                      Christopher Reilly
                      200 West 41st Street, 17th Floor
                      New York, New York 10036
                      Tel: (212) 972-3000
                      Fax: (212) 972-2245
                      Email: fstevens@klestadt.com
                                creilly@klestadt.com

                      *Special Litigation Counsel to Gregory M.
                          Messer, Chapter 7 Trustee*